UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| KEVIN CARIGNAN,<br>    Plaintiff, | :<br>:<br>: |  |
| v. | :<br>: | No. 3:18-cv-1153 (VLB) |
| SCOTT SEMPLE, et al.,<br>    Defendants. | :<br>:<br>:<br>: |  |

## ORDER

Plaintiff, Kevin Carignan, currently confined at Cheshire Correctional Institution in Cheshire, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 alleging that the defendants failed to protect him from harm and were deliberately indifferent to his medical needs. The named defendants are Commissioner Scott Semple; District 1 Administrator Angel Quiros; Warden Scott Erfe; Deputy Warden Amonda Hannah; Captain Lewis; Dr. Ricardo Ruiz; Dr. Maxine Cartwright; three correctional officers, John Does 1, 2 and 4; and two nurses, Jane Does 3 and 5. All defendants are named in individual and official capacities. Plaintiff seeks damages and injunctive relief.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I.  Allegations

On November 26, 2017, plaintiff was housed in South Block 5, cell 10.  His cellmate, Guy Almany, had been transferred to Connecticut from Nevada after assaulting and murdering two of his cellmates.  Plaintiff was not informed of inmate Almany's history.  Housing officer John Doe 4, Captain Lewis, Warden Erfe, and Commissioner Semple were aware of inmate Almany's history before they assigned him to plaintiff's cell.

On November 26, 2017, inmate Almany attacked plaintiff from behind while plaintiff was standing at the toilet.  Inmate Almany swung a nylon laundry bag with a hard plastic electrical adapter in it as if he were swinging a baseball bat.  The adapter struck plaintiff in the head knocking him to the floor.  Inmate Almany

then began kicking plaintiff in the head and face, and struck him on the head with a tube-style television. Plaintiff was rendered unconscious. Despite the noise from the assault, defendants Does 1 and 2 did not respond. Plaintiff thinks that inmate Almany stopped beating him because inmate Almany thought plaintiff was dead.

When he regained consciousness, plaintiff lay still so inmate Almany would not attack him again. When inmate Almany returned to his bunk, plaintiff got to his feet, using the wall for support, and remained silent. Eventually, the cell door was opened so plaintiff could get his medication. The nurse alerted defendant Doe 1 to the attack and he called a Code Blue for prisoner-on-prisoner assault.

The nurse briefly examined plaintiff's injuries while they were waiting for officers to respond to the code. Plaintiff was placed in handcuffs and taken to the medical unit. Nurse Jane Doe 3 noted plaintiff's injuries as loss of two teeth, contusions on his face and swelling. Plaintiff's complaints of dizziness, blurred vision and nausea were ignored. Nurse Doe 3 did not arrange for a doctor to examine plaintiff; instead she cleared him for confinement in restrictive housing.

In the restrictive housing unit, inmate Almany told plaintiff that he assaulted him because correctional officials had been ignoring his requests to return to Nevada. Inmate Almany thought he would now be sent back.

Plaintiff continued to experience problems with his vision. Everything in the room seemed to move. He was afraid to go to sleep because he thought he had sustained a concussion. The following morning Nurse Jane Doe 5 came to the cell to administer plaintiff's medication. Plaintiff struggled to walk to the door

using the top bunk for balance. Nurse Jane Doe 5 commented on his two black eyes, but ignored plaintiff's repeated requests to see a doctor. Nurse Jane Doe 5 told plaintiff to drink water and lie down and rest. Plaintiff received no medical attention for seven days.

Upon release from restrictive housing, plaintiff, who had been housed at Cheshire Correctional Institution for twelve years, was disoriented and reported to South Block 6 instead of South Block 5. The blocks were located in opposite directions from the restrictive housing unit. He immediately submitted requests to the medical and mental health units asking to be seen immediately.

Mental Health Social Worker Debbie saw plaintiff and referred him to Mental Health Dr. Cartwright. She examined plaintiff on December 14, 2017. Dr. Cartwright diagnosed plaintiff as suffering from a severe concussion and told plaintiff she would refer him to Dr. Ruiz. She also said that she would inform custody staff of his condition and ask that plaintiff be allowed additional time to report from place to place within the correctional facility. She did not, however, arrange immediate medical attention for his head injury.

Beginning on December 7, 2017, plaintiff submitted fifteen request to see Dr. Ruiz for the head injury he sustained on November 26, 2017. Dr. Ruiz did not see plaintiff until June 6, 2018, at which time Dr. Ruiz ordered three diagnostic tests. While waiting to see Dr. Ruiz, plaintiff signed up for sick call three times. Each time he was told that he was on the list. His complaints of blurred vision, a sense that the room was moving upon standing, inability to concentrate, confusion, mental fog, and sudden dizzy spells were ignored.

## II.  Discussion

Plaintiff alleges that defendants Semple, Quiros, Erfe, Lewis, Hannah, and Does 1, 2, and 4 were deliberately indifferent to his safety and failed to protect him from harm.  He also alleges that defendants Cartwright, Ruiz and Does 3 and 5 were deliberately indifferent to serious medical needs.  Plaintiff asserts state law negligence claims against all defendants.

A.  <u>Fourteenth Amendment Claims</u>

Plaintiff asserts his federal claims pursuant to the Eighth and Fourteenth Amendments.  Although plaintiff does not indicate whether he is a sentenced prisoner or a pretrial detainee, he alleges that he has been confined at Cheshire Correctional Institution for twelve years, and the Department of Correction website confirms that plaintiff was sentenced in 2000.  *See* [www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=86369](www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=86369) (last visited Aug. 30, 2018).  Claims regarding conditions of confinement or provision of medical care for sentenced inmates are considered under the Eighth, not the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (rights of pretrial detainees are considered under Fourteenth Amendment while rights of sentenced prisoners are considered under Eighth Amendment).  Thus, any Fourteenth Amendment claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B.  <u>Official Capacity Claims</u>

Plaintiff names all defendants in individual and official capacity.  He seeks compensatory and punitive damages but does not indicate the capacity in which

he seeks these damages. The Eleventh Amendment bars claims for damages against state officials in their official capacity unless the state waives this immunity or Congress abrogates it, exceptions not applicable here. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Accordingly, all official capacity claims for damages against the defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Plaintiff also seeks declaratory relief in the form of a declaration that the actions described in the complaint violated his constitutional rights. Declaratory relief operates prospectively. It is intended to enable parties to adjudicate claims before either party suffers significant damages. *Orr v. Waterbury Police Dep't.*, No. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018) (citations omitted). In *Orr*, the court dismissed the request for declaratory relief because the request related only to past actions; the plaintiff had not identified any legal issues that could be resolved by declaratory relief. *Id.* Similarly, plaintiff seeks a declaration regarding past actions. Thus, the request for declaratory relief is inappropriate and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, plaintiff seeks injunctive relief in the form of an order that he be treated by a head trauma specialist. As this request is related to his claim of an untreated concussion, the request for injunctive relief will proceed at this time.

C.  <u>Deliberate Indifference to Safety and Failure to Protect</u>

Plaintiff alleges that defendants Semple, Quiros, Erfe, Lewis, and Hannah, failed to protect him from harm because they knew of inmate Almany's violent history but confined him in general population; defendants Semple, Quiros, Erfe,

Hannah, Lewis, Doe 1, Doe 2, and Doe 4 were deliberately indifferent to plaintiff's safety by requiring him to share a cell with inmate Almany without alerting him to the danger posed by inmate Almany; and defendants Doe 1 and Doe 2 failed to adequately perform their duties and protect plaintiff from harm by failing to intervene to prevent or stop the assault.

To state a claim for deliberate indifference to safety or for failure to protect from harm, plaintiff must show that the conditions of his confinement posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists when prison officials know of and disregard an excessive risk to inmate safety. *See id*. at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Plaintiff alleges that inmate Almany was transferred to Connecticut from Nevada after he assaulted and murdered his cellmates. Thus, he contends that the defendants were on notice that inmate Almany posed a threat to the safety of inmates. In light of the alleged known history of violence, the complaint sufficiently alleges that the defendants knew of and disregarded an excessive risk to inmate safety and, in particular, to his safety as inmate Almany's cellmate. In addition, plaintiff alleges that defendants Doe 1 and Doe 2 were present in the housing unit during the attack and could not have avoided hearing the attack but took no action. This allegation is sufficient to state a plausible failure to protect

claim.  The deliberate indifference to safety and failure to protect claims will proceed.

D.     Deliberate Indifference to Serious Medical Needs

Plaintiff contends that Dr. Cartwright, Dr. Ruiz, Nurse Doe 3 and Nurse Doe 5 were deliberately indifferent to his medical needs because Dr. Ruiz did not treat him for six months and the other defendants failed to ensure that he received treatment.

The Supreme Court has held that deliberate indifference to a convicted prisoner's serious medical needs can constitute cruel and unusual punishment in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A claim of deliberate indifference to serious medical needs contains both an objective and a subjective component.  *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  Under the objective component of the test, the alleged deprivation of medical care must be "sufficiently serious."  *See id.* at 279 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Id.*  A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain.  *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or

the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The subjective component requires that the defendant prison official must have "act[ed] with a sufficiently culpable state of mind." *Id.* (quoting *Hathaway*, 99 F.3d at 66). This does not require "knowing and purposeful infliction of harm," but "suffices if the plaintiff proves that the official acted with deliberate ndifference to inmate health." *See Salahuddin*, 467 F.3d at 279–80. Thus, the defendant must have been "actually aware of a substantial risk that serious inmate harm would result" as a result of his or her actions or inactions and have disregarded that risk. *See id.* The fact that a prison official or employee "failed to alleviate a significant risk that he should have perceived, but did not" does not constitute deliberate indifference. *See Farmer*, 511 U.S. at 838.

A showing of negligence or medical malpractice does not support an Eighth Amendment claim, unless it involves culpable recklessness. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Thus, "not every lapse in prison medical care will rise to the level of a constitutional violation." *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). In certain situations, however,

"instances of medical malpractice may rise to the level of deliberate indifference[,] namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hathaway*, 99 F.3d at 553 (internal quotation marks and citation omitted).

Plaintiff alleges that he sustained a concussion in the attack and that, despite a diagnosis of severe concussion shortly after the attack and his many complaints of blurred vision, dizziness, disorientation, and confusion, he was not treated for six months. A mild concussion has been held not to constitute a serious medical need. *See McKinney v. New Haven Police Dep't*, No. 3:17-cv-1663(JCH), 2017 WL 5137583, at *3 (D. Conn. Nov. 6, 2017) (citation omitted). Here, however, plaintiff alleges that Dr. Cartwright diagnosed a severe concussion. Thus, for purposes of this order, the Court assumes that plaintiff had a serious medical need.

Plaintiff alleges that, despite numerous complaints and requests for treatment, Dr. Ruiz did not see him for six months, Dr. Cartwright diagnosed the severe concussion but failed to ensure that he was treated, and that the nurses merely told him that his name was on the list but provided no treatment. These allegations are sufficient to state plausible claims for deliberate indifference to medical needs.

## CONCLUSION

The Fourteenth Amendment claims, any claims for damages against the defendants in official capacity and the request for declaratory relief are

**DISMISSED pursuant to 28 U.S.C. § 1915A(b). The case will proceed as to the deliberate indifference to safety and failure to protect claims against defendants Semple, Quiros, Erfe, Lewis, Hannah, and Does 1, 2, and 4 and the deliberate indifferent to medical needs claims against defendants Cartwright, Ruiz, and Does 3 and 5.**

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The Clerk shall verify the current work addresses for defendants Semple, Quiros, Erfe, Lewis, Hannah, Cartwright, and Ruiz with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint to these defendants within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on that defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) The Clerk shall send written notice to Plaintiff of the status of this action, along with a copy of this Order.

(4) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE

MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10)    Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)    The Court cannot effect service on the John and Jane Doe defendants without their names and current work addresses.  Plaintiff shall obtain this information through discovery and file an amended complaint that includes the identities of all Doe defendants.  Failure to do so will result in the dismissal of all claims against defendants Doe.

SO ORDERED.

Dated at Hartford, Connecticut.

*Vanessa Lynne Bryant*    Vanessa Bryant
                          2019.03.27 19:29:20 -04'00'
**Vanessa L. Bryant
United States District Judge**